## Lamb *against* Lindsey.

Under the Act of 2d of March 1723, the offence of taking usurious interest is committed by every successive receipt of such interest, and under the 6th section of the Act of 26th of March 1785, a suit to recover the penalty may be brought within a year after the last successive receipt of such interest.

THIS was a *qui tam* action brought by John F. Lamb against William Lindsey, Joseph Sharp, and Joseph Lindsey, to recover the penalty given by the Act of 2d of March 1723, for taking usurious interest. The facts of the case appear in the opinion of the Court. It was tried at *Nisi Prius* before Mr Justice Kennedy, who charged the jury (*inter alia*) as follows: " It is objected that the action is not brought in time. Can more than one penalty be incurred? If the interest has been regularly received on that contract, does it make the lender liable to pay the money to an informer more than once?  It appears to me that the offence can only be committed once, so as to work a forfeiture; and that in the present case the offence was complete when the first usurious interest was taken, to wit, in March 1835. As the first taking of interest was an infraction of the Act, it appears to me that the offence was complete in 1835, and that then alone the defendants were liable to the *qui tam* action. It can only be claimed once, and if it be not within the time prescribed by the Act of Limitations, it cannot be claimed at all. It is therefore clear that this action, not being brought in time, is void."

The plaintiff was nonsuited by order of the judge.

*Markland* and *Broom*, for plaintiff in error, referred to the Act of 2d of March 1723, *Purd.* (1830) 399; 1 *Leon.* 96; 1 *Vent.* 38; 2 *Bos. & P.* 38; 4 *Bl. Com.* 381; 8 *Cranch* 398; 3 *Cranch* 350; 1 *Gall.* 196; Act 26th of March 1785, *Purd.* (1830) 584.

*D. P. Brown*, contra, cited 1 *Saund.* 295; 3 *Wils.* 250; 1 *Doug.* 235; 1 *East* 195; 5 *Mass.* 59; 15 *Ib.* 460; 3 *Wheat.* 311,

[Lamb v. Lindsey.]

The opinion of the Court was delivered by

Huston, J.—This is a *qui tam* action by the plaintiff Lamb against the defendants, brought on the Act of 2d March 1723, which is as follows: " If any person or persons whatsoever do or shall receive or take more than £6 per cent. per annum on any such bond or contract, upon conviction thereof, the person so offending shall forfeit the money and other things lent, one-half thereof to the governor for the support of government, and the other half to the person who shall sue for the same, by action of debt, bill, plaint, or information, in any court of record within this province wherein no essoign, protection, or wager of law, or any more than one imparlance shall be allowed." This Act, changing the rate of interest to 6 per cent., and the clause making the bond or contract void, and making the penalty on conviction the money or other thing lent, instead of three times the value thereof, is the same as the stat. 12 Anne, c. 16.

By section 6th of Act 26th of March 1785, it is provided, that all actions, suits, bills, or informations, which shall be brought for any forfeiture upon any penal Act of Assembly, made or to be made, the benefit and suit whereof is or shall be by the said Act limited to the Commonwealth, or to any person or persons who shall prosecute in that behalf, shall be brought by any persons that may lawfully sue for the same, within one year after the offence was committed.

As the cause goes back for trial on the merits, I shall state only such facts as will show the point decided. William and Joseph Lindsey and Joseph Sharp, after consulting how the law against usury could be evaded, and being told by the conveyancer that he knew of no way, agreed to lend to Joshua Garsed and Joshua Garsed, Jun., $9000, at the interest of 15 per cent. for 4 years, interest payable half yearly, to be secured in this way: The Garseds were to convey to the Lindseys and Sharp a plantation and factory for $9000, the interest of that sum at 15 per cent. was to be the rent, and the Garseds were to accept a lease from the Lindseys and Sharp for the amount of the interest, $1350 per year, payable half yearly. The rent was paid every half year. After the last half year's interest at that rate had been paid, and the whole principal paid, this suit was brought for the penalty in the Act of Assembly, charging the penalty to have accrued on Lindsey and Sharp, (for William Lindsey had died), receiving at the rate of 15 per cent. interest on the $9000 for the last 6 months. No suit had been brought for the violation of the law in receiving interest at that rate, at any previous half yearly payment.

The judge was of opinion, " that the offence can only be committed once, so as to work a forfeiture; and that in the present case the offence was complete when the first usurious interest was taken. As the first taking of the interest was an infraction of the Act, it appears to me the offence was complete in 1835, and that

[Lamb v. Lindsey.]

then alone the defendants were liable to the *qui tam* action. It can only be claimed once, and if it be not within the time prescribed, it cannot be claimed at all. It is therefore clear that this action, not having been brought in time, is void." This suit was brought within a year of the last payment of the usurious interest due the last half year.

The above decision was made on the authority of *Loyd* v. *Williams*, (3 *Wils.* 250). I have carefully examined that case; it was this: Hinchcliffe wished to borrow £100 for 3 months, and Williams agreed to lend him the money for £6 5*s.* interest for the 3 months; and when he advanced the £100, on the 31st of March 1769, he took out of it £6 5*s.* as the interest. At the time of receiving the money, Hinchcliffe lodged with Williams certain wares as a collateral security. These Williams sold at the end of the 3 months, and they produced £24 4*s.*, and he at the end of 3 months took a new note for £78 19*s.* 8*d.*, which, with the produce of the goods sold, amounted to £101 3*s.* 8*d.* This, as it was paid on the 10th of August 1769, was more than legal interest again. The suit for the penalty was brought in July 1770. The declaration is not given, but the whole case shows the suit was to recover the penalty for taking the £6 5*s.* as interest in March 1769. The case was stated for the opinion of the court whether suit for this was brought within time. It is more than once said this was like a special verdict, and the court were confined to the point made. The court decided that as it was more than a year from the receipt of this sum, the suit was too late. The sale of the goods, and the amount produced, and the second note are stated, and the time when it was paid; but this was a new and distinct contract, and neither the counsel, though it was twice argued, nor the court, ever mention it. The whole case turned on the first loan and the £6 5*s.* for 3 months, from which I conclude that alone was stated in the narr.

By the British statute, if the lender by the contract is to receive more than legal interest, the bond is void, though he only take legal interest; but the penalty is not incurred until he actually has received more than legal interest. This is the case in *Doug.* 235. A agreed to lend £100 at 5 per cent. but was to have and receive two guineas premium, and they were paid at the time of the loan. The interest was to be paid half yearly. At the end of the half year, the borrower paid £2 10*s.* The penalty was sued for within a year from that payment, but more than a year from the payment of the two guineas. Lord Mansfield nonsuited the plaintiff, but the nonsuit was taken off. The two guineas, £2 2*s.*, did not amount to the legal interest for half a year. There was then no forfeiture until the £2 10*s.* was paid, which, with the former sum, was usury; and he says in the case before C. J. De Grey, the first sum of £6 5*s.* was more than legal interest.

The case in 2 *Bos.* & *Pul.* 381, is more to the purpose. A agreed

IV. — 2 o

[Lamb v. Lindsey.]

to lend B £500, but B was to make some present, and when he got the money, paid back £50. B continued to pay interest at 5 per cent. on £500, till 1797, when the securities were changed, and continued paying at the same rate until 1799. Within a year after the last payment, suit was brought for the penalty. The court held that as the borrower received in fact but £450, every payment and receipt of the interest on the £500 was usurious. Best, Sergeant, contended that the usury was complete when the £50 was paid back, and the time for recovering the penalty had passed, and cited the case in *Wilson;* but the whole court gave judgment for the plaintiff. So that on looking at the whole case, the very point taken by the defendant here was urged in that case, and the cause could not have been decided as it was if the court had not been of opinion that the penalty was incurred at each time when the lender received more than legal interest.

Our Act of Assembly does not make the bond or security void, and the usurer can recover the sum lent and legal interest. If, then, we were to decide that the first payment of interest was the only one on which suit could be brought, it would go far to defeat the plain meaning of the Act, and secure the usurer for any risk in any length of usurious extortion. We are of opinion that the nonsuit must be taken off, and that proof of taking more than legal interest, though it should be the eighth or twentieth time, will support a suit for the penalty if brought within a year after such taking.

KENNEDY, J., *dissenting.*—A majority of my brethren conceiving that I erred in the instruction given by me to the jury on the trial of this action at *Nisi Prius,* have reversed the judgment. The instruction complained of was, that it appeared to me, that the defendants, according to a fair and correct interpretation of our Act of Assembly against usury, had committed the offence for which the forfeiture was claimed by the plaintiff, more than a year before the commencement of the action; and that the action was therefore declared *void* by another Act, of the 26th of March 1785, which, among other things, enacts, that " all actions, suits, bills or informations, which shall be brought for any forfeiture upon any penal Act of Assembly made or to be made, the benefit and suit whereof is or shall be by the said Act limited to the Commonwealth, and to any person or persons that shall prosecute in that behalf, shall be brought by any person or persons that may lawfully sue for the same, within *one year next after the offence was committed;* and in default of such pursuit, then the same shall be for the Commonwealth, any time within one year after that year ended; and if any *action,* suit, bill, indictment or information, shall be brought *after the time so limited,* the same shall be *void.*" Sensible at all times of the great responsibility which ever rests upon a judge in administering and expounding the law, it never

[Lamb v. Lindsey.]

fails to give me heartfelt pleasure and satisfaction when I am afterwards sustained by the sanction and approbation of my brethren in what I have done in this respect; or when condemned, and I am made to discover satisfactory reasons for it, it is also particularly gratifying to me that my error is thus corrected so as to prevent its working injustice. But I must say that I never can feel satisfied with the reversal of an opinion which I have formed after due and mature deliberation, without some good reason, in my estimation, be advanced in support of such reversal. And notwithstanding I have been solicitously endeavouring to discover some tenable ground for the reversal in this case, I have, instead thereof, been only the more strongly confirmed that I was right in my direction to the jury, and that the language, meaning, and spirit of the Acts in relation thereto not only justified but demanded and required it.

The 1st section of our Act against usury, passed the 2d of March 1723, enacts that " no person shall, directly or indirectly, for any bonds or contracts to be made after the publication of the Act, take for loan or use of money, or any other commodities, above the value of £6 for the forbearance of £100, or the value thereof, for one year, and so proportionably for a greater or lesser sum." And the 2d section thereof further enacts, that " if any person or persons whatsoever do or shall receive or take more than £6 *per cent. per annum*, on any such bond or contract as aforesaid, upon conviction thereof, the person or persons so *offending* shall *forfeit the money* and *other things lent*, one-half thereof to the governor, for the support of the government, and the other half to the person who shall sue for the same, by action of debt, bill, plaint or information, in any court of record within this province, wherein no essoin, protection, or wager of law, or any more than one imparlance shall be allowed." To constitute usury, so as to subject the party to the penalty of the Act, it is sufficiently evident, without any argument to prove it, that there must be an usurious contract at the time of the loan, and a usurious taking, in pursuance of it, of money or money's worth. *Scott v. Brest*, (2 *Term Rep.* 241); 1 *Buls.* 20; 1 *Saund. Rep.* 295 *a, note* (1). In this case the plaintiff, by his own testimony, showed that the usurious contract, in pursuance whereof he alleged the illegal interest was taken, was made on the 20th day of August 1834, for the loan of $9000, for 4 years from that date; for the use and forbearance of which sum of money, the borrowers were to pay the defendants, the lenders thereof, an interest at the rate of 15 *per centum per annum* thereon, half yearly, to wit: on the 20th days of February and August in each succeeding year during the 4 years; and likewise showed further, that the sum of $675 was paid at the end of every half year during the said 4 years, being an interest at the rate of 15 *per centum per annum* on the $9000 lent, for the use thereof. The testimony of the plaintiff, in this respect, was not controverted by the defend-

ants.   They placed their defence, first, on the ground that the contract, as proven by the plaintiff, was not usurious; and, secondly, if it was, that the Limitation Act, referred to above, was a bar to the plaintiff's recovery.   This latter is the only matter that we have to deal with now.   From the plaintiff's own showing then, it appears there was not only a usurious contract, but a usurious taking of illegal interest; that is, an interest at the rate of 15 *per cent. per annum*, as early as the 20th of February 1835, being the end of the first half year after making the contract; and again on the 20th of August 1835, being the end of the first year after the making of the same, a like taking of illegal interest, at the same rate, making in all an interest equal to 15 *per cent. per annum* received on the $9000 loaned, at the end of the first year.

Now it is too clear to admit of the least doubt whatever, that the lenders of the money became liable to pay the penalty prescribed by the Act; that is, *the money lent* by them *eo instante* that they received interest thereon in pursuance of their usurious contract, exceeding 6 *per cent. per annum;* or, I would say, at the first moment that they received an interest on the amount loaned, in pursuance of the contract, exceeding that rate for any less time than a year.   To this latter effect are all the English authorities, giving a construction to the statute of 12 Anne, c. 16, on the same subject.   The English statute, however, is more explicit in this respect than our Act; for, it not only prohibits the taking of more than £5 for the forbearing payment of £100 for one year, but likewise expressly prohibits the taking interest at a rate exceeding £5 for forbearing payment of £100, or any greater or less sum of money for any *less* time than one whole year.   *Loyd* v. *Williams,* (3 *Wils.* 250, *S. C.* 2 *Black. Rep.* 792) ; *Fisher qui tam* v. *Beasley,* (*Doug.* 235) ; *Wade qui tam* v. *Wilson,* (1 *East* 195).   A like construction has been put on the statute against usury in Massachusetts.   *Commonwealth* v. *Frost,* (5 *Mass. Rep.* 59).   But notwithstanding our Act is not so special and particular in its terms, in relation to this point, as the English statute, yet I apprehend that the plain design of the Act, and the manifest end intended to be accomplished by it, necessarily require that such a construction should be given to it, otherwise the great object of it would be most easily eluded.   If then it be true, which I do not understand to be denied, that the defendants became liable to pay the forfeiture prescribed by the Act, at the end of the first half year after the time of lending the money, or, at furthest, at the expiration of the first year afterwards, when the full year's interest of 15 *per cent. per annum* was paid to them by the borrowers, it must, I think, be admitted that the limitation of one year, mentioned in the Act of 1785, as recited above, commenced running from the very day on which such year's interest was paid.   If so, then, it is perfectly manifest that no *qui tam* action could be commenced and carried on with success for the recovery of the forfeiture thereby incurred,

[Lamb v. Lindsey.]

after the expiration of the year; for, the Act declares expressly, that such action, if so brought, shall be *void*.

But it is said this action is not brought to recover the penalty or forfeiture incurred by the defendants by reason of their having received the first year's usurious interest, but for a forfeiture alleged to have been incurred by reason of their having received 15 *per cent. per annum*, paid to them, as interest on the amount of the loan, by the borrowers, for the fourth year, when the principal was also paid and the debt extinguished. This seems necessarily to raise the question, whether more than one forfeiture or penalty can be incurred and recovered by reason of the receipt of more than 6 *per cent. per annum* interest at different times upon the same usurious contract; or, in other words, whether the penalty prescribed by the Act is incurred, and may be recovered as often as more than 6 *per cent. per annum* interest is taken and received by the lender of the borrower on the same usurious contract. And if it be that only one penalty can be incurred and recovered, must not that necessarily be for and on account of the first interest exceeding the rate of 6 per cent. per annum that shall be received on the usurious contract? That the offence is complete, and the penalty incurred by the first receipt of such interest, is not only a proposition which seems to be self-evident, but established by all the authorities in which it is spoken of. Then suppose that the party is sued for it immediately, and that it is recovered from him, it necessarily follows, if he be liable only to pay the penalty once for receiving more than 6 *per cent. per annum* on the same usurious contract, that he cannot be sued a second time and a recovery had against him. If a recovery, then, of the penalty from him, for and on account of his first receipt of interest, exceeding the rate of 6 *per cent. per annum*, be a discharge from all future liability to forfeit and pay a like penalty for a subsequent and second receipt of interest exceeding 6 *per cent. per annum* on the same contract, why, I would ask, if he be not sued in a *qui tam* action within the year, or by the Commonwealth alone, within the two years, shall not the Limitation Act, which requires the action to be brought within one or other of these two periods, operate so as to discharge him as effectually from all future liability to pay the penalty on account of any subsequent receipt of interest exceeding 6 *per cent. per annum* in pursuance of the same contract, as the recovery of it from him by suit would have done on account of the first receipt of such interest? Although it is very clear that the design of the Act against usury was to inflict the penalty when the offence should be committed, yet it is equally clear, that the subsequent Act in which one, or two years, at most, is allowed for that purpose, was intended to protect and shield the party from it altogether, if not sued for it within that time; so that his discharge by virtue of the Limitation Act would seem to be quite as efficacious as if obtained

[Lamb v. Lindsey.]

by a recovery of the penalty from him in an action brought for that purpose. Besides, if the Limitation Act be not a protection against a *qui tam* action brought to recover the penalty on account of the illegal interest received for the second year, when no such action has been brought on account of the like interest received for the first year, the Commonwealth may be defeated of her right, unless double penalties, at least, are permitted to be recovered by reason of the receipt of usurious interest on the same contract; for she has the whole of the second year after the receipt of the first usurious interest, allowed her to sue for the penalty thereby incurred, and if she delay suing therefor until near the close of the time allowed her for that purpose, an informer may, in the mean time, in a *qui tam* action brought by him, have recovered the penalty alleged to have been incurred by the receipt of the usurious interest at the end of the second year of the loan, which cannot be revoked or reversed, so that the lender must either be punished twice for receiving usurious interest on the same contract, or the Commonwealth defeated of her right, contrary to the express allowance of the Act.

Having shown that if no more than one penalty can be recovered on account of usurious interest received on the same contract, it must be for that which first creates the offence and renders it complete, which is clearly the first interest that shall have been received thereon exceeding the rate of 6 *per cent. per annum*, it only remains now to show that more than one offence, whereby the penalty prescribed by the Act is incurred, cannot be committed by the receipt of interest exceeding 6 *per cent. per annum* on the same contract, and that the offence is complete and the penalty incurred the instant that more than 6 *per cent. per annum* shall have been received for the first time on the contract. In the first place, it appears to me, that the plain import of the language used in the Act is, that there shall be but one forfeiture or penalty demanded for receiving usurious interest on the same bond or contract. The words of the Act are " the person or persons so offending (that is, who shall receive or take more than 6 pounds *per cent. per annum* on any bond or contract made after the publication of the Act) shall forfeit *the money* and *other things lent.*" Not the *value*, observe, of the money and other things lent, but *the money* and *other things lent.* Not as it is in the Statute of 12 Anne c. 16, which enacts that the party " shall forfeit and *lose for every such offence* the treble *value* of the moneys, wares, merchandises and other things so lent." Now, although it may be said with truth, that it is impracticable in most, if not in all cases, to get at or recover the identical money or other things lent, and therefore, in order that the Act may not be rendered altogether inoperative, the *value* of the money and other things lent, must, from necessity, be taken as the forfeiture imposed by the Act; still it is sufficient to show that the legislature intended that *the* money or other

[Lamb v. Lindsey.]

things lent should constitute the forfeiture, so far, at least, as it might be practicable to come at them, and that their value should only be demanded, as an *equivalent* therefor, when they themselves were not to be had.   Hence it would seem to follow necessarily that as the money and other things lent cannot be forfeited by or taken from the lender but once, the legislature could only have intended one forfeiture or penalty should be imposed and exacted on account of illegal interest received for the same money or other things lent on the same bond or contract.   And whether it shall be demanded and sued for by any one, or the Commonwealth, within the time allowed for that purpose, can make no possible difference to the party who has made himself liable to pay it.   If it be not sued for within such time, it is his gain, and he stands protected by the Act of Limitations.   In short, it is the same to him in respect to any subsequent forfeiture of the same money or other things so lent, as if he had been sued therefor, and the same had been recovered from him upon his first receipt of illegal interest.   It involves a contradiction in terms to say that the *same thing* shall be forfeited twice.   And hence the legislature used the language they have in the Act, in order to show that but one forfeiture or penalty should be imposed for the receipt of illegal interest on the same bond or contract.

In the second place, it must be borne in mind that the Act in question is a penal Act, and therefore, according to a well-settled rule of the common law, must be taken strictly, and not extended by equity to the prejudice of those against whom the penalty is inflicted.   On the contrary, by means of this rule *general words* in some cases shall be *restrained* and *abridged* for the *benefit* of him against whom the penalty is imposed.   *Reniger* v. *Fogassa*, (*Plowd. Com.* 17); 19 *Vin. Ab.* 521.   So that, unless it were expressly declared by the Act, that *as often* as any person shall receive and take, on such bond or contract, more than £6 for the forbearance of payment of £100, or the value thereof lent for one year, he shall forfeit the *value* of the money or other things lent, it would be wrong, and manifestly unjust, to subject the party to the payment of more than one penalty, on account of the receipt of interest taken on the same bond or contract, though taken for different years; because it would be contrary to the rule which prevails in the construction of penal statutes, and therefore contrary to the will and design of the legislature, who must be presumed to have been acquainted with the rule when they framed and passed the Act.   And accordingly, as it appears to me, the English courts, in expounding the Statute of 12 Anne, the words of which are much stronger in favour of making every receipt of interest exceeding £5 for the use and forbearance of payment of £100, upon the same usurious contract, a separate and distinct offence for which a penalty of treble the *value* of the money or the goods lent shall be paid, have

IV. — 58          2 o

[Lamb v. Lindsey.]

held that by the first receipt of such interest the offence is thereby committed and made complete, so that the party becomes liable immediately to pay the penalty; but not so by any subsequent receipt of the like interest upon the same contract. I must, however, except the case of *Scurry* v. *Freeman*, (2 *Bos. & Pull.* 381), which is the other way, and contrary, as I conceive, to all the other English authorities on the subject. It was a *qui tam* action, brought in the Common Pleas, where A lent B £500, the latter paying at the same time a premium of £50, and to pay interest afterwards on the £500, at the rate of 5 *per cent. per annum* for 5 years, at the end of which the suit was instituted; and the court ruled, first, that the loan was only to be taken as a loan of £450, because £50 were returned at the time of the loan. And secondly, that as the interest received was at the rate of £5 on £500, for the last year, (as also for every preceding year,) it was usurious; and that the suit having been commenced within one year after the receipt thereof, it was not barred by the Statute of Limitations. The court, contrary, most clearly, to all the other cases embracing the same point, seem to have considered the payment of the £50 premium as a mere reduction of the principal sum lent, and not as a thing paid for the use of the loan. And again, that the lender became liable to pay the penalty by receiving at the rate, afterwards, of £5 *per cent. per annum* on the £450, the real amount of the loan, as the court considered it, for the last year, notwithstanding he had received the like interest at the end of each of the four preceding years.

In *Loyd* v. *Williams*, (3 *Wils.* 250, S. C. 2 *Black. Rep.* 792), decided previously by the Common Pleas, it was held that a return of £6 5s. out of £100, lent for three months, by the borrower to the lender at the time of the loan, was not a reduction of the principal, but a premium, or sum paid in advance for the use and forbearance of the payment of the £100 lent for three months, and as it exceeded the rate of 5 *per cent. per annum*, the lender became instantly liable to pay the forfeiture or penalty mentioned in the statute; but because the action was not brought within one year after the return of the £6 5s., it was held not to lie. Yet, if the court had considered the return of the £6 5s. a mere reduction of the principal sum lent, as it did in *Scurry* v. *Freeman*, the action would have been maintainable; for the borrower paid off the whole of the £100 afterwards, within the year preceding the commencement of the action, with 5 *per cent.* interest upon all of it that was not paid at the day appointed for that purpose, without any account being taken of, or credit allowed, whatever for the £6 5s.; so that if the court had adopted the principle upon which the court went in *Scurry* v. *Freeman*, the action would have been maintainable in like manner. Again, in *Wade qui tam* v. *Wilson*, (1 *East* 195), upon a contract to forbear payment of £600 for a year, reserving interest at the rate of 5 *per cent.*, for which

[Lamb v. Lindsey.]

a *premium* of 10 guineas was paid in the first instance, the usury was held by the Court of King's Bench to be complete upon the lender's receiving subsequently as much of the growing interest within the year as added to the 10 guineas exceeded the rate of 5 *per cent. per annum,* and that he, by reason thereof, became immediately liable to pay the forfeiture.

The same principle was also laid down by the same court, long before, in Lord Mansfield's time, in *Fisher qui tam* v. *Beasley,* (*Doug.* 235). In this last case, the defendant lent £100 to G upon his bond, payable with interest of 5 *per cent.* at the end of 6 months, receiving from G, at the same time, a premium of 2 guineas. The premium, itself not exceeding the legal interest, it was held by the court not sufficient to make the defendant liable to pay the penalty, until he afterwards received the interest at the rate of 5 *per cent.* in addition thereto, which rendered the commission of the offence of usury complete, and subjected the defendant to the payment of the penalty. Had the premium, however, which was only £2 2s., exceeded the rate of 5 *per cent.,* it is clear, from what is said in the case, that the court would have held the usury complete upon the receipt of it; for Lord Mansfield recognises the authority of the case of *Loyd* v. *Williams,* where the principle was settled as shown above. I think it also fairly inferrible, from what Lord Mansfield there says, if the premium received had exceeded legal interest, that he was most decidedly of opinion that, as more than a year had been suffered, afterwards, to elapse, before the plaintiff brought his suit, it could not have been maintained. In fact, he nonsuited the plaintiff on the trial, because he then thought the offence was completed by the receipt of the premium, which was to be considered as a part of the illegal interest required to be paid, and that a receipt of any part thereof, though not exceeding 5 *per cent.,* was sufficient to constitute the offence, and as the action had not been brought within the year afterwards, it was barred by the Statute of Limitations. Afterwards, however, he changed his mind, but so far only as to make it necessary, before the offence could be said to have been committed, that the lender should be shown to have received more than legal interest, no matter whether received under the name of premium or interest. But if the premium had exceeded the legal interest in that case, it is perfectly manifest that he would not have consented to take off the nonsuit, for it would then have been a case running on all-fours with the case of *Loyd* v. *Williams,* which he cites with approbation. Indeed it seems never to have entered into his mind, more than it did into that of the court in the case of *Loyd* v. *Williams,* that two or more penalties might be incurred by the receipt of illegal interest, at different times, on the same contract. If it had, it is not likely that he would have nonsuited the plaintiff, as he did, on the ground that the year had run from the receipt of the premium, before the bringing of the action. It

[Lamb v. Lindsey.]

is probable he would have said, as the court did in *Scurry* v. *Freeman*, that by deducting the premium from the £100, the amount of the loan became reduced to £97 18s. only, and as 5 *per cent.* interest had been taken at the end of the 6 months, which came within the year, on the £100, an interest which certainly exceeded the rate of 5 *per cent.* on £97 18s., the action was therefore maintainable. That *Scurry* v. *Freeman* is in opposition to the principle established and recognised in all the other cases on the subject, is too clear to admit of the slightest doubt; and it appears to me that the latter cases, among other things, rather go to establish the principle, that but one penalty can be incurred and recovered by reason of the receipt of illegal interest on the same contract, though interest, exceeding the rate prescribed by the statute, shall have been received thereon more than once.

But let the proper construction of the English statute be as it may in this respect, it seems to be the only one that our Act is fairly susceptible of. Our Act is materially different *in its* terms from the English. The words of our Act are in effect: " If any person whatsoever shall receive and take more than £6 *per cent. per annum* on any bond or contract made after the passing of the Act, *the* person *so offending* shall forfeit *the* money and other things lent." Now if the language were " every such person *as often as* he shall *so offend* shall forfeit the *value* of the money and other things lent," it might, perhaps, be argued with some plausibility, that the penalty was intended to be inflicted as *often* as there should be a receipt by the lender of interest exceeding the rate of 6 *per cent. per annum* on the same bond or contract, in the same manner as if each receipt thereof had been on a different bond or contract. The language of the Statute of Anne resembles somewhat the language here supposed. The words of it are, " that every person which shall, &c., upon *any* contract to be made, take, accept and receive, &c., for the forbearing or giving day of payment one whole year, of and for their money or other thing, above the sum of £5, for the forbearing of £100, for a year, &c., shall forfeit and lose for *every such offence* the treble *value* of the moneys, wares, &c., lent." It appears to me, therefore, under every view that I have been able to take of our Act, that only one penalty can be incurred by taking illegal interest on the same bond or contract, and that it is incurred by the lender immediately, by his first taking thereon a premium, or premium and interest added together, making a sum for the use of his money that shall exceed the rate of 6 *per cent. per annum;* and unless he be sued for the penalty so incurred in a *qui tam* action within one year, or by the Commonwealth within two years after his first receiving of such illegal interest, he is for ever protected against paying the penalty by the Limitation Act of 1785.

Nonsuit taken off.